IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-00588-PAB-TPO

GREG SCHRECENGOST,
     Plaintiff,

v.

DEPUTY ETHAN POWERS, in his individual capacity,
ELIAS GONZALEZ, in his individual capacity,
SERGEANT MICHAEL RAIRDON, in his individual capacity, and
LARIMER COUNTY,
     Defendants.

---

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

Defendants, above-named, by and through their undersigned counsel, move for summary judgment pursuant to Fed. R. Civ. P. 56 as follows:

### CASE BACKGROUND AND ARGUMENT SUMMARY

On March 2, 2022, Defendant Larimer County Sheriff ("LCSO") Deputy Ethan Powers stopped Plaintiff Greg Schrecengost for driving without a front license plate. During the course of the traffic stop, Deputy Powers noticed an odor of alcohol coming from Plaintiff Schrecengost. Plaintiff Schrecengost denied the odor of alcohol, refused roadside sobriety tests and attempted to leave, over Deputy Powers's orders to stay. Plaintiff Schrecengost then resisted Deputy Powers's efforts to control him and keep him from leaving. Plaintiff threatened Deputy Powers both verbally and physically with bodily harm with a weapon. Plaintiff and Deputy Powers went to the ground, and at one point Plaintiff Schrecengost gained control of Deputy Powers's Taser to the point Deputy Powers believed Plaintiff Schrecengost was trying to point it at him.

Defendant LCSO Deputy Elias Gonzales, who was on a "ride-along" with Deputy Powers, saw the struggle going on between the two and stepped in to assist, controlling Plaintiff's legs and conducting a brief pat-down search of Plaintiff for officer safety. Other LCSO Deputies, including Defendant LCSO Sergeant Rairdon, arrived in response to Deputy Powers's call for cover. By that time, Plaintiff was already handcuffed.

As a result of the traffic stop, Plaintiff was charged with a license plate violation, Driving Under the Influence ("DUI"), Obstruction, Resisting Arrest, and Attempt to Disarm a Peace Officer. Plaintiff pled guilty to the license plate violation, was convicted at trial of Obstruction, and was ultimately found not guilty of the remaining charges after a second trial.

Plaintiff brings seven discrete claims against the Defendants in this matter, as follows: 1) a state-law[1] false-arrest claim against Deputies Powers and Gonzales; 2) a state-law excessive force claim against Deputies Powers and Gonzales; 3) a § 1983 excessive-force claim against Deputies Powers and Gonzales; 4) a § 1983 false-arrest claim against all three individual Deputies; 5) a state-law malicious-prosecution claim against all three individual Deputies; 6) a § 1983 malicious-prosecution claim against all three individual Deputies; and 7) a § 1983 agency-liability claim against Larimer County ("*Monell* claim").

With respect to the § 1983 claims, the Defendant Deputies are entitled to qualified immunity. With respect to the *Monell* claim, Defendant Larimer County is entitled to summary judgment for Plaintiff's failure to state a claim. And with respect to the state-law claims, the individual Defendants are entitled to summary dismissal because their actions were at all times

---

[1] All of the state-law claims against the Defendant Deputies are brought pursuant to C.R.S. § 13-21-131, for alleged violations of the Colorado Constitution's analogues to the Fourth and Fourteenth Amendments of the U.S. Constitution.

reasonable and lawful under the circumstances presented to them, and Plaintiff's arrest and prosecution were supported by probable cause.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1.      On March 2, 2022, in the area of County Roads 70 and 15 in Larimer County, Colorado, LCSO Deputy Ethan Powers conducted a traffic stop on Plaintiff Schrecengost for failing to have a front license plate on his car. [Powers Report, attached as **Exhibit A**, at Bates No. Defendants 000003-4; Powers BWC #1, attached as **Exhibit B**, at 10:54:35-38[2]].

2.      At the time of the stop, LCSO Deputy Elias Gonzalez was on a "ride-along" with Deputy Powers. [Powers Deposition, attached as **Exhibit C**, at 39:11-14; Gonzalez Deposition, attached as **Exhibit D**, at 23:17-20].

3.      During the course of the stop, Deputy Powers noticed the odor of alcohol from Plaintiff, as well as other indicia of intoxication. [**Ex. A**, at Defendants 000004; **Ex. B**, at 10:45:54 - 10:57:34].

4.      When Deputy Powers informed Plaintiff of the alcohol odor, Plaintiff denied that Powers smelled alcohol, refused roadside sobriety testing, and attempted to leave. [**Ex. B**, at 10:58:30 – 10:59:57; **Ex. A**, at Defendants 000004].

5.      At that point, Deputy Powers briefly took hold of Plaintiff's sleeve and told him he was not free to leave, then physically released Plaintiff. [**Ex. B**, at 10:59:56 – 11:00:06; **Ex. A**, at Defendants 000004-5].

---

[2] "BWC" refers to body-worn camera recordings. Pinpoint reference to the recordings reference the timestamp in the upper right-hand corner of the recordings.

6.      Deputy Powers attempted to explain the reason for the stop and the indicia of alcohol to Plaintiff, who repeatedly refused to comply with Powers's commands to remove his hands from his pockets. [**Ex. B**, at 10:59:57 - 11:00:15].

7.      Deputy Powers then took hold of Plaintiff's left arm and repeatedly ordered him to put his hands behind his back. Plaintiff refused and continued to pull away from Powers. [**Ex. B**, at 11:00:12-30; **Ex. A**, at Defendants 000004-5].

8.      Plaintiff refused to obey Powers's lawful commands, repeatedly saying "No!" When Deputy Powers explained that force would be used if Plaintiff did not comply, Plaintiff threatened Powers by saying, "Force is gonna be used against YOU!" [**Ex. B**, at 11:00:15-36].

9.      Deputy Powers continued to give commands in an attempt to control Plaintiff, and telling him he was under arrest. Plaintiff continued to say, "No I'm not!" and "No!" in response to Powers's commands. [**Id.,** at 11:00:30-45].

10.     Deputy Powers then took Plaintiff to the ground in further effort to control him. [**Ex. B**, at 11:00:45; **Ex. A**, at Defendants 000005].

11.     Plaintiff continued to resist, and produced a metal flashlight from his pocket. Plaintiff then further threatened Deputy Powers by saying, "I will fuck you up with this light." [**Ex. B**, at 11:00:45 – 11:01:07; **Ex. A**, at Defendants 000005; **Ex. D**, at 119:17 – 120:1].

12.     Plaintiff further continued to resist and refuse lawful orders to put his hands behind his back. After two direct threats from Plaintiff, Deputy Powers used his Taser on Plaintiff in

further effort to control him, but it was ineffective. [**Ex. B**, at 11:01:07-20; **Ex. A,** at Defendants

000005; Powers BWC #2,[3] attached as **Exhibit E**, at 11:01:22-58].

    13.    Deputy Powers and Plaintiff continued to struggle, with Plaintiff at one point

suddenly grabbing Powers's Taser with both hands, trying to point it at Deputy Powers, and taking

hold of Powers's hand, preventing him from radioing for further assistance. [**Ex. E**, at 11:01:58 –

11:02:12; Screenshot from Ex. E, attached as **Exhibit F**, showing Plaintiff's hands on Taser;

Schrecengost Deposition, attached as **Ex. G**, at 73:24 – 74:1); **Ex. A**, at Defendants 000005].

    14.    Deputy Gonzalez stepped in to assist, taking control of Plaintiff's legs. This allowed

Plaintiff to finally be controlled and taken into handcuffs. Other Deputies, including Defendant

Rairdon, arrived a few minutes later in response to Powers's radio requests for assistance. [**Ex. D**,

at 117:8-9; 121:7-9; **Ex. A**, at Defendants 000005; Cherry BWC, attached as Exhibit H, at

11:05:12-30; Rairdon BWC, attached as **Exhibit I**, at 11:18:00-47].

    15.    Plaintiff was charged with a license plate violation, DUI, Obstructing a Peace

Officer, Resisting Arrest, and Attempt to Disarm a Peace Officer. Plaintiff pled guilty to the license

plate violation, and was convicted by a jury of Obstruction. [Verdict, attached as **Exhibit M**].

Plaintiff was found not guilty of the remaining charges after a second criminal trial.

    16.    Deputy Powers suffered a shoulder injury as a result of the altercation with Plaintiff,

and was ordered by Sgt. Rairdon to seek medical attention for it. [**Ex. C**, at 130:20 – 133:9; Rairdon

Report, attached as **Exhibit K**, at Defendants 000028; Powers Medical Records, attached as

**Exhibit N**].

---

[3] Deputy Powers's BWC was dislodged during he struggle with Plaintiff, and appears to have been involuntarily switched off and on during the struggle, for approximately two seconds. This is why there are two BWC attachments to this motion.

## STANDARD OF REVIEW

**Summary Judgment:** Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. F.R.C.P. 56(a). While all reasonable factual inferences must be drawn in favor of the nonmoving party, if the moving party demonstrates the absence of a genuine issue of material fact, the nonmoving party must marshal "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Otteson v. United States,* 622 F.2d 516, 519 (10th Cir. 1980). "[A] mere 'scintilla' of evidence will be insufficient to defeat … summary judgment. Instead, the nonmoving party must introduce some 'significant probative evidence … support[ing] the complaint.'" *Fazio v. City & County of San Francisco,* 125 F.3d 1328, 1331 (9th Cir. 1997) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 252 (1986)).

**Qualified Immunity:** The individual Defendants have asserted qualified immunity regarding Plaintiff's § 1983 claims. Summary judgment motions asserting qualified immunity are reviewed "differently from other summary judgment decisions." *Cortez v. McCauley*, 478 F.3d 1108, 1114 (10th Cir. 2007). While the Court "still view[s] the facts in the light most favorable to the non-moving party and resolve[s] all factual disputes and reasonable inferences in its favor," *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014), under qualified immunity "the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right, and (2) the constitutional right was clearly established at the time of defendant's conduct." *Courtney v. Okla. ex rel. Dep't of Pub. Safety*, 722 F.3d 1216, 1222 (10th Cir. 2013). Thus, a plaintiff must show that it "would be clear to a reasonable officer that [the officer's] conduct was unlawful in the

situation he confronted." *Id*. Importantly, law is not clearly established unless existing precedent

places the right in question "beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 (2011).

## ARGUMENT

**1.     Deputies Powers's and Gonzalez's use of force was objectively reasonable under the circumstances.**

A police officer may use only such force as is "objectively reasonable" in light of the facts

and circumstances confronting them at the time of the incident. In determining the reasonableness

of police force, courts consider the familiar, non-exclusive factors set forth in *Graham v. Connor*,

490 U.S. 386, 396 (1989): (1) the severity of the crime at issue; (2) whether the suspect poses an

immediate threat to the safety of the officers or others; and (3) whether the suspect is actively

resisting arrest or attempting to evade arrest by flight. *Id.* This analysis holds whether analyzed

under federal law or Colorado law. *See Woodall v. Godfrey*, 2024 COA 42, ¶ 18, 553 P.3d 249,

257 ("… when determining whether the force used … is reasonable under … the Colorado

Constitution, courts should apply the "objective reasonableness" standard articulated in

*Graham*."). Moreover, courts must consider the "totality of circumstances" confronting an officer

at the time, as well as the events leading up to the use of force, rather than on a mechanically

applied test. *See Graham* at 396; *Barnes v. Felix*, 145 S. Ct. 1353, 1356 (2025); *Palacios v.

Fortuna*, 61 F.4th 1248, 1256 (10th Cir. 2023). Here, all three *Graham* factors favor Defendants

Powers and Gonzales.

First, while the initial stop was legitimized by Plaintiff's missing license plate, review of

the record reveals that by the time Plaintiff was finally handcuffed, probable cause had arisen to

charge Plaintiff with attempted assault to a peace officer and attempt to disarm a peace officer,

both of which are felonies under Colorado law. *See* C.R.S. § 18-3-203(c) (assault to peace officer);

C.R.S. § 18-8-116 (disarming peace officer). This is particularly clear from review of Deputy
Powers's body-worn camera video, which repeatedly shows Plaintiff violently struggling with
Powers, repeatedly grabbing Powers's hand while he is trying to summon fellow officers via radio,
grabbing Powers's Taser with both hands and trying to point it at him, and verbally threatening
Powers with serious bodily harm with a weapon, stating "I will fuck you up with this" and "force
will be used against you." **[Ex. B**, at 11:00:30-39; 11:01:04-07; Photograph of Plaintiff's flashlight,
attached as **Exhibit J**; **Ex. E**, at 11:01:53-58; **Ex. D**, at 119:24 – 120:1]. Under the first *Graham*
factor, "[w]hen the crime at issue is a felony, regardless of whether the felony is violent or
nonviolent, the crime is considered to have a high degree of severity which weighs against the
plaintiff." *Palacios*, 61 F.4th at 1256 (citing *Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154,
1170 (10th Cir. 2021)).

As to the second, and "most important" factor, *Pauly v. White*, 874 F.3d 1197, 1215-16
(10th Cir. 2017), the same record review detailed above demonstrates that Plaintiff obviously
showed an immediate threat to both Deputy Powers and Deputy Gonzales. Not only did Plaintiff
repeatedly refuse to obey every lawful command, he produced a metal flashlight from his pocket
(notably after refusing to take his hand from his pocket), and specifically threatened Powers with
it. [**Ex. D**, at 119:24 – 120:1; 124:21-24]. This flashlight was equipped with aggressive metal teeth
around its lens designed for striking, and the potential damage if used as a weapon is self-evident.
[**Ex. J**]. Moreover, Plaintiff resisted and overcame the effects of a Taser, and continually grabbed
Powers's hand as he attempted to summon other officers' help. [**Ex. A**, at Defendants 000005; **Ex.
E**, at 11:01:22-58]. The second *Graham* factor therefore weighs in favor of the Defendants.

And as to the third factor, Plaintiff was obviously actively resisting arrest, both verbally and physically. When Deputy Powers informed Plaintiff he was under arrest, Plaintiff immediately and repeatedly stated, "No I'm not," and continued to resist, attempt to pull away from Powers, and refuse to obey orders. Once on the ground, Plaintiff produced a weapon, threatened Powers with it, overcame a Taser use, and continued thereafter to grab Powers's hand, as detailed above. Moreover, Plaintiff was ready and prepared to use equal force against Deputy Powers. [**Ex. G**, at 61:12 – 62:1]. Indeed, the fact that it ultimately took two Deputies' efforts to gain control of Plaintiff and get him handcuffed is testament to the level of resistance Plaintiff exhibited. The third *Graham* factor therefore weighs in favor of Defendants.

As shown above, all three *Graham* factors weigh in favor of Defendants Powers and Gonzalez with respect to their use of force. As their respective uses of force were reasonable under the circumstances, no constitutional violation may lie here, and both Defendants are entitled to qualified immunity under the first prong of that analysis. *See Palacios*, 61 F.4th at 1263 ("Having determined that there is no constitutional violation, it is unnecessary to consider whether the law was clearly established at the time of the incident."). Nonetheless, even if a constitutional violation could somehow be culled from the foregoing facts and authority (which it cannot), the authority above demonstrates that Plaintiff cannot meet his burden of showing clearly established law under the second qualified immunity prong. With respect to both prongs, then, Defendants Powers and Gonzalez are entitled to dismissal of the § 1983 excessive claims against them.

Furthermore, as noted above, claims brought for alleged excessive force in violation of the Colorado Constitution pursuant to C.R.S. § 13-21-131 are analyzed under the same framework as § 1983 claims; that is, through analysis of whether the officers' actions were reasonable under the

*Graham* factors. *Woodall*, 553 P.3d at 257. As the foregoing analysis and authority demonstrates that Defendants Powers's and Gonzalez's actions were reasonable in the circumstances they confronted, no constitutional violation occurred, and they are entitled to dismissal of the state-law excessive force claims as well.

> **2.      Plaintiff has failed to establish the personal participation of Sergeant Rairdon in any alleged constitutional violation, and has failed to establish the personal participation of Deputy Gonzalez in any malicious prosecution claim.**

It is axiomatic that individual liability pursuant to § 1983 "must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1425 (10th Cir. 1997); *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976). Here, the record is clear that Defendant LCSO Sergeant Rairdon had no contact with Plaintiff on scene, and in fact did not even arrive on scene until Plaintiff was already being placed in the back of Deputy Powers's patrol vehicle in handcuffs. [**Ex. K**, at Defendants 000028; **Ex. I**, at 11:18:00-47]. Mere presence at the scene of an investigation does not constitute personal participation in an alleged constitutional violation. *See Novitsky v. City of Aurora*, 491 F.3d 1244, 1254 (10th Cir. 2007) (finding no personal participation where officer was present at the scene but did not "assist or direct" the officer who performed the arrest); *Choate v. Huff*, 773 F. App'x 484, 487 (10th Cir. 2019) (granting qualified immunity to defendant in excessive force claim who was "the lead officer on the scene and had the most contact with [the decedent] before she was shot," but neither used force nor directed other officers to use force). Once Plaintiff arrived at Poudre Valley Hospital ("PVH") he was turned over to the custody of LCSO Deputy Lantis, who is not a party to this action, to maintain security. [**Ex. K**]. And while Sgt. Rairdon did remain at PVH while Deputy

Powers drafted the affidavit for a search warrant to take Plaintiff's blood, there is no record evidence that Sgt. Rairdon played any role in this process.

Furthermore, while Plaintiff does not expressly bring a failure-to-intervene claim against any Defendant in this matter, Plaintiff does allude to one against Sgt. Rairdon in the first paragraph of his Complaint. *See* [ECF 1] at 1, ¶1 ("Defendant Rairdon … failed to intervene …"). While the Tenth Circuit has recognized that an officer's failure to intervene can constitute personal participation in an unlawful arrest, the officer must have "observed or had reason to know of a constitutional violation and have had a realistic opportunity to intervene." *Jones v. Norton*, 809 F.3d 564, 576 (10th Cir. 2015) (brackets and quotation omitted). Here, Plaintiff conclusorily alleges that "at the hospital [Sgt. Rairdon] watched the video of Power's arrest and gained personal knowledge of the absence of probable cause of this arrest, and elected to do whatever he could to help Defendants Powers and Gonzalez cover up this fact …" [ECF 1] at 31-32, ¶178. The record is without factual support for this allegation. Sergeant Rairdon was asked at deposition whether he had ever "pulled up another deputy's camera or video, whether its recorded or live, from their units before they docked it." Sergeant Rairdon responded that he has never done that, and that he cannot view another deputy's recorded video until it is uploaded to the dock. [Rairdon Deposition, attached as **Exhibit L**, at 30:2-18]. However, even if Sgt. Rairdon could have reviewed the video, the arrest was already complete by the time Sgt. Rairdon arrived on scene, foreclosing any possibility that Sgt. Rairdon could have intervened in the same. Thus, given that Sgt. Rairdon did not personally participate in the seizure or arrest of Plaintiff, he is entitled to summary judgment on Plaintiff's claims for excessive force and false arrest, under both state and federal law.

Furthermore, there is no record evidence indicating that Sgt. Rairdon or Deputy Gonzalez played any role in Plaintiff's charging or prosecution. Sergeant Rairdon and Deputy Gonzalez are therefore entitled to dismissal for lack of participation on the malicious prosecution claims as well. And indeed, even if there were some evidence of these Defendants' participation in Plaintiff's prosecution, probable cause existed for all charges upon which Plaintiff was charged and prosecuted, as demonstrated below in section 3 of this motion. Sergeant Rairdon is therefore entitled to dismissal of all Plaintiff's claims against him, and Deputy Gonzalez is entitled to dismissal of the malicious prosecution claims against him.

The foregoing is true under both federal and state law. The Tenth Circuit derived the personal participation requirement from § 1983's provision that liability is limited to the official who "subjects, or causes to be subjected," an individual to a constitutional violation. *See McClelland v. Facteau*, 610 F.2d 693, 695-96 (10th Cir. 1979) (holding that plaintiffs must allege an "affirmative link," or "sufficient causal connection," between defendant's conduct and alleged constitutional violation). Colorado Rev. Stat. § 13-21-131 includes identical causation language. *Compare* C.R.S. § 13-21-131(1) *with* 42 U.S.C. § 1983. The coextensive nature of the Colorado and United States Constitutions, coupled with the Colorado Court of Appeals broad endorsement of applying § 1983 jurisprudence to §13-21-131 claims, *Woodall*, at 256, supports reading C.R.S. § 13-21-131 "against the background of tort liability that makes a man responsible for the natural consequences of his actions," *Shash v. City of Pueblo*, 770 F. Supp. 3d 1279, 1307 (D. Colo. 2025) (quoting *Monroe v. Pape*, 365 U.S. 167, 187 (1961)), and that Defendants Rairdon and Gonzalez are entitled to dismissal of their respective claims under state and federal law.

**3.      Plaintiff's arrest and prosecution were supported by probable cause.**

The Fourth Amendment allows a warrantless arrest if an officer has "probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "Probable cause requires only a 'fair probability' of illegal conduct, not 'proof that something is more likely true than false.'" *Meadows v. The City of Oklahoma City*, 851 F. App'x 127, 129 (10th Cir. 2021) (quoting *U.S. v. Denson*, 775 F.3d 1214, 1217 (10th Cir. 2014)). Furthermore, arresting officers need not have personally received information amounting to a reasonable suspicion or to probable cause but may rely upon information relayed to them by other officers and dispatch so long as such reliance is "objectively reasonable." *Koch v. City of Del City*, 660 F.3d 1228, 1239-40 (10th Cir. 2011). Moreover, courts must assess malicious-prosecution claims "charge by charge." *Chiaverini v. City of Napoleon*, 602 U.S. 556, 562 (2024). And here, each of the five criminal charges brought against Plaintiff was supported by probable cause.

As noted above, Plaintiff here was charged with and prosecuted for: 1) lacking a front license plate; 2) DUI; 3) Obstructing a Peace Officer; 4) Resisting Arrest; and 5) Attempt to Disarm a Peace Officer. Plaintiff pled guilty to the license plate infraction, so that charge is not part of the analysis. Similarly, a jury found Plaintiff guilty of Obstruction, which moots any challenge to probable cause for arrest and prosecution on that charge. *See United States v. Alvarez*, 2015 U.S. Dist. LEXIS 177866, at *8 (D. Wyo. 2015) (quoting *United States v. Mechanik*, 475 U.S. 66, 70 (1986) ("[T]he petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendant [was] guilty as charged, but also that [he is] in fact guilty as charged beyond a reasonable doubt.")). With respect to the DUI charge, the record is clear that probable cause for arrest and prosecution on that charge developed when Deputy Powers smelled alcohol on Plaintiff, observed Plaintiff's compromised motor skills and slurred speech, and Plaintiff

refused roadside sobriety tests. [**Ex. B**, at 10:58:10 - 10:59:35; **Ex. A**, at Defendants 000004];
*Wilder v. Turner* 490 F.3d 810, 815 (10th Cir. 2007) (probable cause for DUI under Colorado law
(C.R.S. § 42-4-1301) arises when suspect exhibits indicia of intoxication and refuses sobriety
tests).

Regarding the Resisting Arrest charge, under Colorado law a person "commits resisting
arrest if he knowingly prevents or attempts to prevent a peace officer … from effecting an arrest
of the actor or another, by … [u]sing or threatening to use physical force or violence against the
peace officer or another; or … [u]sing any other means which creates a substantial risk of causing
bodily injury to the peace officer or another." C.R.S. § 18-8-103(1). Here, as set forth at length
above, probable cause arose for this charge when Plaintiff threatened Deputy Powers with using
force against him, threatened to "fuck … up" Powers while brandishing a weapon, taking control
of Powers's Taser, and otherwise grabbing Powers's hand during the altercation.

Regarding the Attempt to Disarm a Peace Officer charge, under Colorado law a person
"commits disarming a peace officer if he or she knowingly, without justification and without
consent, removes the firearm or self-defense electronic control device, direct-contact stun device,
or other similar device of a peace officer …" C.R.S. § 18-8-116(1). Again, as set forth above,
probable cause arose for this charge when Plaintiff took control of Deputy Powers's Taser with
both hands and attempted to point it at Powers. [**Ex. C**, at 129:17-24; **Ex. A**, at Defendants
000005].

In addition to the foregoing, an arrest is lawful under the Fourth Amendment so long as
probable cause existed as to *any* offense that could be charged. *See Smith v. Wampler*, 108 F.
App'x 560, 567 (10th Cir. 2004); *see also Devenpeck v. Alford*, 543 US 146, 152-56 (2004). Under

the circumstances present here, probable cause also existed for Plaintiff's arrest and prosecution for Attempted Assault to a Peace Officer. Under Colorado law, a person commits that offense if, "with intent to prevent one whom he or she knows, or should know, to be a peace officer … from performing a lawful duty, he or she intentionally causes bodily injury to any person[.]" C.R.S. § 18-3-203(c). Here, probable cause arose to arrest and prosecute Plaintiff for this charge as well, as Deputy Powers suffered a shoulder injury as result of Plaintiff's efforts to prevent him from exercising his lawful duties. [ **Ex. C**, at 130:20 – 133:9; **Ex. K**, at Defendants 000028]. And with respect to all of the foregoing, it is irrelevant to the analysis that Plaintiff was not ultimately arrested for, charged with, prosecuted for, or found not-guilty of all the foregoing violations. *See Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979) ("The mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest."); *Washington v. City of Okla. City*, 2022 U.S. Dist. LEXIS 245910, at *6 (W.D. Okla. 2022) ("probable cause may exist regardless of 'whether the arrestee was later charged with a crime'" (quoting *Fogarty v. Gallegos*, 523 F.3d 1147, 1157 (10th Cir. 2008))).

In light of the foregoing, probable cause existed for Plaintiff's arrest and prosecution on all the charges levied against him. And the record is without any evidence that Sgt. Rairdon had any reason to disbelieve Deputy Powers's version of events. All the individual Defendants are therefore entitled to summary judgment on this ground as well.

### 4.    Plaintiff's Malicious Prosecution Claims Fail as a matter of law.

Plaintiff brings malicious prosecution claims against all individual Defendants under both federal and state law. [ECF 1] at 32-33, ¶¶ 180-200. To prevail on a § 1983 malicious prosecution claim, Plaintiff must prove five elements: (1) the defendant caused the plaintiff's

continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages. *Sanchez v. Hartley*, 810 F.3d 750, 754 n.1 (10th Cir. 2016) (citing *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008)). As demonstrated at length above, Plaintiff cannot show the personal participation of Defendants Gonzalez and Rairdon in Plaintiff's charging or prosecution. In addition, and as also demonstrated at length above, Plaintiff cannot show that Plaintiff's arrest or continued prosecution were without probable cause. *See* Section 3, *supra*. In this regard, the record contains no evidence that any of the charges against Plaintiff here were based on false statements or evidence. Neither can Plaintiff show that any Defendant acted with malice in arresting and prosecuting Plaintiff.

"[M]alice, in the context of malicious prosecution, requires evidence of intent, not mere negligence." *Chavez-Torres v. City of Greeley*, 660 F. App'x 627, 629 (10th Cir. 2016). "[M]alice may be inferred from intentional or reckless behavior." *Stonecipher v. Valles*, 759 F.3d 1134, 1146 (10th Cir. 2014) (citation omitted). And because malicious prosecution under § 1983 is derived from the common law, Courts have observed that Colorado "defines 'malice' in state malicious prosecution claims as 'any motive other than a desire to bring an offender to justice.'" *Shash* at 1296 (citing *Chavez-Torres*, 660 F. App'x at 629 (in turn quoting *Suchey v. Stiles*, 155 Colo. 363, 394 P.2d 739, 741 (Colo. 1964)). To this end, Plaintiff apparently takes issue with Deputy Gonzalez's assisting Deputy Powers in restraining and searching him, but the only explanation in the record for Deputy Gonzalez's decision to assist in this process was for the safety of Deputy Powers and Plaintiff alike. [**Ex. D**, at 128:15-16]. None of his behavior indicates that Deputy Gonzalez had a knowing or reckless intent that Plaintiff be prosecuted for criminal charges.

Regarding Sgt. Rairdon, the record is simply devoid of any evidence that he acted with malice toward Plaintiff at all, whether on-scene, at the hospital or in subsequent dealings with the prosecution while the criminal case was pending. The same is true with respect to Deputy Powers. Plaintiff has therefore failed to adequately allege the first, third and fourth elements of a malicious prosecution claim against the individual Defendants, entitling them to summary judgment on Plaintiff's malicious prosecution claims under both state and federal law.

### 5.    Plaintiff cannot demonstrate *Monell* Liability against Larimer County.

Plaintiff seeks to impose *Monell* liability against Larimer County for a multitude of reasons, all conclusorily pled. [ECF 1] at 35-37, ¶¶ 201-213. The Supreme Court has "required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury," thereby "ensur[ing] that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality," rather than holding the municipality liable simply because it employed a constitutional wrongdoer. *Board of the County Comm'rs v. Brown*, 520 U.S. 397, 403-04 (1997).

The relevant policy or custom can take several forms, including: a formal regulation or policy statement; an informal custom amounting to widespread practice; decisions of employees with final policymaking authority; the ratification by final policymakers of the decisions of subordinates; or the failure to adequately train or supervise employees. *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010). But, whatever species of policy or custom is alleged, a plaintiff must also demonstrate that, "through its *deliberate* conduct," the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action

was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights. *Board of the County Comm'rs*, 520 U.S. at 404 (emphasis in original).

Plaintiff alleges here that the County has failed to adequately train and supervise its officers regarding citizens constitutional First and Fourth Amendment rights, [ECF 1] at ¶¶ 202-04, 205, 207; that the County has trained "all deputies, including Rairdon, Powers, and Gonzlez, that excessive force against anyone who is not verbally cooperating is authorized and encouraged, Id. at ¶ 210; and that Larimer County supervisory officers have a custom and practice of ratifying illegal conduct, Id. at ¶ 208. The fatal flaw in these allegations, however, is that the record is without factual support for any of them. Furthermore, "the inadequacy of police training may serve as a basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Allen v. Muskogee*, 119 F.3d 837, 841 (10th Cir. 1997) (citation omitted). Therefore, "a municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Erickson v. City of Lakewood, Colo.*, 489 F. Supp. 3d 1192, 1207 (D. Colo. 2020) (alterations omitted) (quoting *Connick v. Thompson*, 563 U.S. 51, 61, (2011)). Simply put, Plaintiff does not allege any facts supporting a finding of deliberate indifference on the part of the County. "To satisfy the stringent deliberate indifference standard, [a] pattern of similar constitutional violations by untrained employees is ordinarily necessary." *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1285 (10th Cir. 2019). Plaintiff has not provided any information establishing a pattern or other, similar constitutional violations by LCSO employees.

In addition to the failure to demonstrate any factual basis for his *Monell* claims, Defendants

have shown at length and in detail above that no constitutional violation was committed in the first

instance. In such cases, no *Monell* liability may attach. As the Tenth Circuit Court of Appeals

recently observed:

> Because municipalities act through officers, ordinarily there will be a
> municipal violation only where an individual officer commits a constitutional
> violation. … In other words, [t]he general rule … is that there must be a
> constitutional violation, not just an unconstitutional policy, for a municipality to be
> held liable. … Thus, [i]n most cases, this makes the question of whether a
> municipality is liable dependent on whether a specific municipal officer violated an
> individual's constitutional rights. …
>
> Having determined that defendant Ryan did not violate George's Fourth
> Amendment rights, we conclude that plaintiffs' § 1983 municipal liability claim
> against the City necessarily fails.

*Est. of George v. City of Rifle*, 85 F.4th 1300, 1321 (10th Cir. 2023) (citations and internal

quotation marks omitted). The same is true in the instant matter. Without an underlying

constitutional violation, Plaintiff's *Monell* claims cannot lie, and Larimer County is entitled to

summary judgment on this claim.

## CONCLUSION

For the reasons and authority foregoing, Defendants are entitled to summary judgment and

dismissal of all of Plaintiff's claims in this matter. Defendants' use of force was at all times

reasonable in the circumstances they confronted, probable cause existed for Plaintiff's arrest and

prosecution, and no *Monell* liability in these circumstances.

WHEREFORE, Defendants move this Court for an Order dismissing all claims in

Plaintiff's Complaint.

DATED this 21st day of July, 2025.

s/ Heather D. Kuhlman
Michael T. Lowe
Heather D. Kuhlman
Bruno, Colin, Goddard & Lowe, P.C.
1120 Lincoln Street, Suite 1606
Denver, CO  80203
Telephone: (303) 831-1099
mlowe@brunolawyers.com
hkuhlman@brunolawyers.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I certify that on this 21st day of July 2025, a true and correct copy of the foregoing **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** was e-filed via CM/ECF system, with service to the following.

Sarah Schiekle,
Counsel for Plaintiff
The Life & Liberty Law Office
1055 Cleveland Avenue
Loveland, CO 80537
E: sarah@lifeandlibertylaw.com

_s/ Julie Bozeman_
Julie Bozeman, Paralegal
Bruno, Colin, Goddard & Lowe, P.C.