IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 24-cv-00588-PAB-TPO

GREG SCHRECENGOST,

     Plaintiff,

v.

ETHAN POWERS, Deputy in his individual capacity, and
ELIAS GONZALEZ, in his individual capacity,

     Defendants.

---

**ORDER**

---

This matter comes before the Court on Defendants' Motion for Summary Judgment [Docket No. 40]. Plaintiff Greg Schrecengost filed a response. Docket No. 52. Defendants filed a reply. Docket No. 57. The Court has jurisdiction pursuant to 28 U.S.C. § 1331. On March 2, 2022, defendants conducted a traffic stop on plaintiff's vehicle, leading plaintiff to file this lawsuit alleging claims for unreasonable seizure and excessive force.

## I.    UNDISPUTED FACTS[1]

On March 2, 2022, in the area of County Roads 70 and 15 in Larimer County, Colorado, defendant Deputy Ethan Powers of the Larimer County Sheriff's Office ("LCSO") conducted a traffic stop on plaintiff for failing to have a front license plate on his car. Docket No. 40 at 3, ¶ 1. At the time of the stop, defendant LCSO Deputy Elias

---

[1] The following facts are undisputed unless otherwise indicated.

Gonzalez was on a "ride-along" with Deputy Powers.  *Id.*, ¶ 2.  He was dressed in street clothes.  *See generally* Docket No. 41-1.

Deputy Powers was driving in the opposite direction of plaintiff.  Docket No. 52 at 6, ¶ 22.  Deputy Powers saw plaintiff complete a lawful pass of a slow-moving semi truck and noticed that plaintiff's vehicle did not have a front license plate.  *Id.*  Deputy Powers got behind plaintiff's car and activated his red and blue lights.  *Id.*, ¶ 26.  Plaintiff immediately pulled his car to the side of the road, without any indication that plaintiff was impaired.  *Id.*  Deputy Powers asked plaintiff for his driver's license, plaintiff complied, and Deputy Powers took the license.  *Id.*, at 7, ¶ 30.[2]  Deputy Powers directed plaintiff to exit the vehicle and walk to the rear of the car.  *Id.* at 8, ¶ 41.  Plaintiff complied, with his exit and walking being normal.  *Id.*

Deputy Powers asked plaintiff how much alcohol he had to drink that day, to which plaintiff replied "none."  *Id.* at 9, ¶ 48.  Deputy Powers asked plaintiff when was the last time plaintiff smoked marijuana, to which plaintiff replied "never."  *Id.* at 10, ¶ 49.  Deputy Powers asked if plaintiff took prescription medications "for anything."  *Id.*, ¶ 50.  Plaintiff told Deputy Powers that he used a prescribed ointment for his back and sometimes took Motrin.  *Id.*, ¶ 51.  While talking to Deputy Powers, plaintiff had a wallet, a cigarette, and cigarette rolling papers in his hands.  *Id.*, ¶ 52.

Deputy Powers asked plaintiff, "you mind if I look at your eyes for a minute?"  *Id.*, ¶ 56.  Plaintiff asked Deputy Powers if he was not already looking at his eyes.  *Id.*

---

[2] Defendants dispute this assertion, arguing that the video does not support it.  *See* Docket No. 57 at 1, ¶¶ 27-32.  The Court finds that the video shows that plaintiff gave Deputy Powers his driver's license and that Deputy Powers took it.  *See* Docket No. 41-1 at 00:36-1:40.

Deputy Powers again asked, "is it okay if look at your eyes for a minute?  This is a yes or no question."  *Id.*, ¶ 57.  Plaintiff responded, "No.  This is starting to feel confrontational."  *Id.*  Deputy Powers asked his question a third time and plaintiff told Deputy Powers "no."  *Id.* at 11, ¶¶ 58, 60.  Plaintiff and Deputy Powers exchanged the following words:

> POWERS: I think I'm smelling alcohol on your breath, okay? . . . I could be wrong, okay?  I'm not saying, I'm not saying I do, I could be wrong, but what I wanna do is make sure that its safe for you to be driving before I send you down the road, okay? The way I can do that is by-
>
> PLAINTIFF: What I saw-
>
> POWERS: By looking at your eyes and do some other voluntary roadside maneuvers-
>
> PLAINTIFF: What I saw, was me pass a car that was not doin' the speed limit, you turn off heading West, I'm heading East, I pass him, you think I'm doing somethin' unsafe, so that's why you pull me over-
>
> POWERS: I haven't said you're doin' something unsafe-
>
> PLAINTIFF: This all has absolutely nothing to do with me not having a front license plate
>
> . . .
>
> POWERS: So here's the deal, okay?  I'm not here to argue with you.  What I am here to do is make sure that it's safe for you to be driving, okay?  Based on my interaction with you thus far, I'm not certain of that, not saying that it's not safe for you to drive, I just wanna be sure that I'm doing my job, okay?  The way I can do that is through lookin' at your eyes, potentially through some voluntary roadside maneuvers, soon as I can confirm-
>
> PLAINTIFF: I want to be at work.
>
> POWERS: Soon as I can confirm that it's safe for you to drive, I'm gonna put you back in that car and send you on your way, okay?  However, at this point currently, I have some concerns that it may not be safe for you to drive and I'm not comfortable putting you back in that car.  Okay?  Does that make sense? That's all I'm trying to do here, okay, I'm not trying to pick on ya, I'm not trying to be a mean guy-

PLAINTIFF: Yeah, you are.

POWERS: Okay.  You certainly caught my attention when you were passing that car, but you did not do anything illegal when you did that.

PLAINTIFF: Exactly.

*Id.* at 11-12, ¶ 61.[3]  Deputy Powers asked plaintiff, "would you blow on a preliminary breath test if I asked you to?," and plaintiff responded "no*." Id.* at 13, ¶ 64.  Deputy Powers asked plaintiff, "why not?" and plaintiff responded, "because [I] did not consent to any of this shit." *Id.* (internal quotations omitted). [4]  Plaintiff turned towards his vehicle and started to walk away.  Docket No. 40 at 3, ¶ 4.[5]  Deputy Powers grabbed

---

[3] The parties do not dispute the content of Deputy Powers and plaintiff's conversation regarding voluntary roadside maneuvers.  *See* Docket No. 52 at 11-12, ¶¶ 61-62; Docket No. 57 at 4, ¶¶ 61-62.  Rather, they dispute whether this conversation shows that plaintiff refused to perform a sobriety test.  *See id.*  Thus, the Court will consider it undisputed that the parties had this exchange.  *See* Docket No. 41-1 at 3:27-4:10, 4:37-5:19

[4] Defendants dispute that Deputy Powers was lying about smelling alcohol and that he "invent[ed]" an approach for testing for intoxication that involves asking the driver if he can look at their eyes.  *See* Docket No. 57 at 4, ¶¶ 63-65.  However, defendants do not dispute that Deputy Powers asked whether plaintiff would "blow on a preliminary breath test."  Docket No. 52 at 13, ¶ 64.  Furthermore, the video footage confirms this.  *See* Docket No. 41-1 at 5:34-5:42.  Accordingly, the Court deems this fact admitted.

[5] Plaintiff disputes that he tried to leave, arguing that plaintiff was "growing concerned for his safety and tried to create more space between himself and Deputy Powers."  Docket No. 52 at 1, ¶ 4.  The Court finds that plaintiff's description is blatantly contradicted by the video footage, which clearly shows plaintiff turning toward his vehicle and starting to walk away.  *See* Docket No. 41-1 at 5:59-6:04.  Even if plaintiff was growing concerned for his safety, plaintiff's subjective mindset is irrelevant for purposes for plaintiff's Fourth Amendment claims where the video footage clearly shows plaintiff walking away.  *See Medina v. Cram*, 252 F.3d 1124, 1131 (10th Cir. 2001) ("Claims of excessive force are analyzed under the objective reasonableness standard of the Fourth Amendment."); *York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir. 2008) ("Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense.") (citation omitted).

plaintiff's left arm and said, "don't walk away from me, we're not done."  Docket No. 52

at 14, ¶ 70.  Plaintiff did not walk away any further and said, "[y]ou're being

confrontational."  *Id.*  Deputy Powers twice ordered plaintiff to take his hands out of his

pockets, but he did not take his left hand out of his pants pocket.  Docket No. 40 at 4,

¶ 6.[6]

Deputy Powers grabbed plaintiff's left arm and wrist, attempting to twist them

behind plaintiff's back.  Docket No. 52 at 14, ¶¶ 73-74.[7]  Plaintiff did not place his hands

behind his back, but instead resisted Deputy Powers' attempt.  Docket No. 40 at 4, ¶ 7.[8]

---

[6] Plaintiff disputes that he failed to obey Deputy Powers' commands to remove his hands from his pocket, arguing that plaintiff "had one hand resting on the stitching of one of his pockets (with the other holding his unlit cigarette) throughout the entire encounter up to this point."  Docket No. 52 at 2, ¶ 6.  The Court finds that plaintiff's assertion is blatantly contradicted by the video footage that shows plaintiff put his left hand in his pants pocket*, see* Docket No. 41-1 at 3:34-36, where it remained at the point Deputy Powers commanded plaintiff to remove his hands from his pockets.  *See id.* at 3:36-6:18.

[7] Defendants dispute plaintiff's description of Deputy Powers' conduct as he grabbed plaintiff, arguing that Deputy Powers' body-worn camera footage cited by plaintiff does not support plaintiff's view.  *See* Docket No. 52 at 14, ¶¶ 73-74; Docket No. 57 at 5, ¶¶ 73-74.  The Court finds that the footage supports plaintiff's assertion that Deputy Powers grabbed plaintiff's left arm and wrist and attempted to twist them behind plaintiff's back.  *See* Docket No. 41-1 at 6:20-50.

[8] Plaintiff disputes that he resisted Deputy Powers' attempts to put plaintiff's hands behind his back and refused to comply with Deputy Powers' commands.  *See* Docket No. 40 at 4, ¶¶ 7-9.  Plaintiff contends that he was not attempting to "pull away" from Deputy Powers.  Docket No. 52 at 2, ¶ 7.  Plaintiff argues that he did not "'pull away' so much as his whole body stiffened and recoiled in reaction to the physical pain Powers [was] purposely inflicting upon him."  *Id*.  Even viewing the video in the light most favorable to plaintiff, to the extent that plaintiff argues that his reaction to Deputy Powers attempting to twist plaintiff's arm behind his back was an involuntary response to pain, and not active resistance, the Court finds that no reasonable jury could credit plaintiff's version of events.  *See Emmett v. Armstrong*, 973 F.3d 1127, 1131 (10th Cir. 2020) (accepting plaintiff's "version of the story" to the extent that it is not "so utterly discredited by the record that no reasonable jury could have believed him") (citation omitted).  The footage shows no indication that plaintiff is in pain.  Moreover, plaintiff told Deputy Powers that he would not comply with Deputy Powers' commands.  *See* Docket No. 41-1 at 6:20-50.  Thus, the video blatantly contradicts plaintiff's version of

Deputy Powers told plaintiff several times to put his hands behind his back and that he was under arrest, with plaintiff responding "no" and "no, I'm not." *Id.*, ¶¶ 7-9. Deputy Powers stated, "force is gonna be used against you if you don't put your hands behind your back." Docket No. 52 at 2-3, ¶ 8.[9] Plaintiff responded, "[f]orce is gonna be used against you because you're assaulting me." *Id*.

Deputy Powers took plaintiff to the ground. *Id.* at 15, ¶ 76. Deputy Gonzalez then grabbed and held plaintiff's legs down. *Id.* Plaintiff produced a metal flashlight, which he held in his hand, and said, "Dude I could fuck you up with this light. I'm not assaulting you. I'm not doing anything wrong." Docket No. 40 at 4, ¶ 11.[10] Deputy Powers said to plaintiff, "get on your back! Do it now." Docket No. 52 at 15, ¶ 77. Without warning, Deputy Powers used his Taser on plaintiff. *Id.* Plaintiff yelled "ow" and rolled onto his back in response to the shock. *Id.* Deputy Powers then told plaintiff to roll onto his stomach. *Id.* Plaintiff grabbed Deputy Powers' Taser. Docket No. 40 at

---

events. Furthermore, plaintiff's subjective mindset (i.e., whether he was failing to put his hands behind his back due to pain or a desire to resist arrest) is not material. Accordingly, the Court finds that defendants' assertions of fact regarding plaintiff's resistance to arrest, *see* Docket No. 40 at 4, ¶¶ 7-9, are undisputed.

[9] The parties do not dispute that Deputy Powers told plaintiff that force would be used against him if plaintiff did not comply and that plaintiff responded that force would be used against Deputy Powers, although the parties selectively quote from such exchange in their assertions of fact. *See* Docket No. 40 at 4, ¶ 8; Docket No. 52 at 2-3, ¶ 8.

[10] Plaintiff disputes that he produced a flashlight from his pocket, arguing that he had it "in his hand *throughout* his and Powers' entire encounter." Docket No. 52 at 3, ¶ 11. The video footage clearly shows that plaintiff did not have the flashlight in his hands and plaintiff fails to cite where in the video the flashlight can be seen in plaintiff's hands or provide other evidence that supports this assertion. *See generally* Docket No. 41-1. The Court finds that the video blatantly contradicts plaintiff's version of events. Accordingly, the Court will deem this fact admitted.

5, ¶ 13.[11]  Deputy Powers continued yelling at plaintiff to roll over onto his stomach.

Docket No. 52 at 15, ¶ 79.  Plaintiff took hold of Deputy Powers' hand, which prevented

Deputy Powers from radioing for further assistance.  Docket No. 40 at 5, ¶ 13.  Deputy

Gonzalez got off plaintiff's legs so that plaintiff could roll over.  Docket No. 52 at 16,

¶ 81.  Plaintiff rolled over and Deputy Powers placed him in handcuffs.  *Id.*

Plaintiff was charged with a license plate violation, driving under the influence of

alcohol ("DUI"), Obstructing a Police Officer, Resisting Arrest, and Attempt to Disarm a

Police Officer.  Docket No. 40 at 5, ¶ 15.  Plaintiff pled guilty to the license plate

violation, was convicted at a jury trial of Obstruction, and was acquitted of the remaining

charges at a second jury trial.  *Id.*

## II.    LEGAL STANDARD

### A.  <u>Summary Judgment</u>

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when

the "movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if,

under the relevant substantive law, it is essential to proper disposition of the claim.

*Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes

over material facts can create a genuine issue for trial and preclude summary judgment.

*Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is

---

[11] Plaintiff disputes that he "pointed" the Taser at Deputy Powers.  *See* Docket
No. 52 at 4, ¶ 13.  Plaintiff argues that he "clearly was trying" to get the Taser "out of the
fight by throwing it away from the scene."  *Id.*  Because plaintiff does not dispute that he
grabbed the Taser, the Court will deem this fact admitted.

"genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

## B. Qualified Immunity

"Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate

8

clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A court should resolve questions of qualified immunity at the earliest possible stage of litigation. *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987).

To overcome a qualified immunity defense at the summary judgment stage, a plaintiff must demonstrate (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. *Surat v. Klamser*, 52 F.4th 1261, 1270-71 (10th Cir. 2022). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case." *Pearson*, 555 U.S. at 236. Generally, a constitutional right is clearly established if "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Surat*, 52 F.4th at 1276. "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Torres v. Madrid*, 60 F.4th 596, 603 (10th Cir. 2023); *see also Irizarry v. Yehia*, 38 F.4th 1282, 1293 (10th Cir. 2022). The relevant precedent is "considered on point if it involves *materially similar conduct* or applies with *obvious clarity* to the conduct at issue." *Irizarry*, 38 F.4th at 1294 (emphasis in original); *see also Shepherd v. Robbins*, 55 F.4th 810, 815 (10th Cir. 2022). "To be clear, we do not require plaintiffs to engage in a scavenger hunt for a prior case with identical facts. We ask whether the existing law provides fair warning to a defendant." *Shepherd*, 55 F.4th at 815 (citations omitted).

### C. <u>Video Evidence</u>

On summary judgment, when a court has "video evidence of the incident in question" that is inconsistent with a plaintiff's allegations of fact, the court "will accept the version of the facts portrayed in the video, but only to the extent that it blatantly contradicts the plaintiff's version of events." *See Emmett*, 973 F.3d at 1131 (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)) (internal quotations and alteration omitted). This means that the court must accept as true plaintiff's "version of the story to the extent that it is not so utterly discredited by the record that no reasonable jury could have believed him." *See id.* (internal quotation and citation omitted). If the video footage "arguably could support" either party's version of events, the court must "view the video in the light most favorable" to the non-moving party. *See id.* at 1135.

### III.  ANALYSIS

The complaint asserts the following claims for relief: excessive force and wrongful arrest in violation of Art. II, § 7 of the Colorado Constitution pursuant to Colo. Rev. Stat. § 13-21-131 against Deputies Powers and Gonzalez (Claim One); excessive force in violation of the Fourth Amendment of the U.S. Constitution pursuant to 42 U.S.C. § 1983 against Deputies Powers and Gonzalez (Claim Two); unreasonable seizure in violation of the Fourth Amendment pursuant to § 1983 against Deputies Powers and Gonzalez and Sergeant Michael Rairdon (Claim Three); malicious prosecution in violation of Art. II, § 25 of the Colorado Constitution pursuant to § 13-21-131 against Deputies Powers, Gonzalez, and Sergeant Rairdon (Claim Four); malicious

prosecution in violation of the Fourth Amendment pursuant to § 1983 against Deputies

Powers and Gonzalez and Sergeant Rairdon (Claim Five); and a *Monell* claim pursuant

to § 1983 against Larimer County Sheriff John Feyen in his official capacity (Claim

Six).[12]  Docket No. 1 at 28-37.

The parties stipulated to the dismissal of Claims Five and Six against Sergeant

Rairdon and Sheriff Feyen.  *See* Docket No. 65.  Furthermore, in plaintiff's response to

defendants' motion for summary judgment, plaintiff represents that he "dismisses his

state and federal claims for malicious prosecution."  Docket No. 52 at 17.  Thus, the

remaining claims in this case are Claim One, state-law excessive force and unlawful

arrest, Claim Two, federal excessive force, and Claim Three, federal unlawful seizure,

against Deputies Powers and Gonzalez.  Deputies Powers and Gonzalez raise the

defense of qualified immunity to plaintiff's § 1983 claims.  *See* Docket No. 40 at 2-3.

### A. <u>Claim Two – § 1983 Excessive Force Claim</u>

The Fourth Amendment is not a guarantee against all seizures, just

unreasonable seizures.  *United States v. Sharpe*, 470 U.S. 675, 682 (1985).  "[A]ll

claims that law enforcement officers have used excessive force–deadly or not–in the

course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be

analyzed under the Fourth Amendment and its 'reasonableness' standard."  *Graham v.

Connor*, 490 U.S. 386, 395 (1989).

To determine "whether the force used to effect a particular seizure is

'reasonable'' under the Fourth Amendment," a court must carefully balance "'the nature

---

[12] On August 2, 2024, the magistrate judge granted plaintiff's motion to substitute
Sheriff Feyen in the place of defendant Larimer County.  Docket No. 25.

and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id*. at 396 (citations omitted). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. (citing *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968)). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation." *Id*. at 396-97.

Proper application of the Fourth Amendment's reasonableness standard to an excessive force case focuses on three, non-exclusive factors: "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id*. at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)); *see also Saucier v. Katz*, 533 U.S. 194, 195 (2001) ("If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed."). The court must consider "the totality of the circumstances and the full length of the use of the force." *See Krueger v. Phillips*, 154 F.4th 1164, 1206 (10th Cir. 2025).

The Court finds that the alleged excessive force began when Deputy Powers attempted to twist plaintiff's arm behind his back. *See* Docket No. 52 at 14, ¶¶ 73-74. Deputy Powers then took plaintiff to the ground while Deputy Gonzalez[13] got on

---

[13] Defendants do not contest that Deputy Gonzalez can be held liable for the allegations of excessive force that occurred after Deputy Powers took plaintiff to the ground. *See* Docket No. 40 at 7-10.

plaintiff's legs to hold him down. *Id.* at 15, ¶ 76. While plaintiff was on the ground, Deputy Powers used his Taser on plaintiff. *Id.*, ¶ 77. Deputy Powers then placed plaintiff in handcuffs. *Id.* at 16, ¶ 81.[14]

### a. Severity of the Crime

Regarding the first *Graham* factor, defendants contend that, "while the initial stop was legitimized by Plaintiff's missing license plate, review of the record reveals that by the time Plaintiff was finally handcuffed, probable cause had arisen to charge Plaintiff with attempted assault on a peace officer and attempt to disarm a police officer, both of which are felonies under Colorado law." Docket No. 40 at 7. Plaintiff responds that the alleged development of probable cause for the felonies does not change the fact that the crime at issue is a missing front license plate or DUI. Docket No. 52 at 23. Plaintiff argues that to adopt defendants' contention "would require the Court to resolve multiple disputed facts in Defendants' favor." *Id.*

While plaintiff was initially stopped for a traffic infraction, *see* Colo. Rev. Stat. § 42-3-202(3)(a), plaintiff subsequently threatened Deputy Powers with a metal

---

[14] Plaintiff asserts that, after being handcuffed by Deputy Powers, Deputy Gonzalez "put his knee into Plaintiff's back while they awaited more deputies to arrive." Docket No. 52 at 16, ¶ 82. Plaintiff argues that there was "no lawful purpose for maintaining him in this dangerous prone position with weight placed upon his back." *Id.* Plaintiff cites a screenshot from the video in support; however, the screenshot blatantly contradicts plaintiff's characterization that Deputy Gonzalez placed his knee into plaintiff's back. Accordingly, the Court will not consider this fact. While the screenshot shows Deputy Gonzalez pressing his hand into plaintiff's left shoulder, the screenshot contradicts that plaintiff was in a "dangerous prone position with weight placed upon his back." *See id.* Plaintiff does not cite the video footage that shows Deputy Gonzalez restraining plaintiff while waiting for back-up; however, it appears that that screenshot is taken from the body-worn camera footage at Exhibit H, Docket No. 41-7. This video footage also blatantly contradicts plaintiff's characterization of him being in a prone position with Deputy Gonzalez's knee in his back, and plaintiff does not cite other evidence in support. *See* Docket No. 41-7 at 3:10-4:20.

13

flashlight.  *See* Docket No. 40 at 4, ¶ 11.  Colo. Rev. Stat. § 18-3-203 provides that a

person assaults a police officer where:

> With intent to prevent one whom he or she knows, or should know, to be a peace
> officer, firefighter, emergency medical care provider, or emergency medical
> service provider from performing a lawful duty, he or she intentionally causes
> bodily injury to any person

Colo. Rev. Stat. § 18-3-203(1)(c).  In these circumstances – where plaintiff refused a

directive to remove his hand from his pockets, resisted arrest, during a struggle

suddenly had a weapon in his hands, and told Deputy Powers that he could "fuck [him]

up with this light," *see* Docket No. 40 at 4, ¶¶ 6, 11 – the Court finds that a reasonable

officer would have suspected that plaintiff committed a felony crime of attempted assault

on a police officer.  *See Krueger*, 154 F.4th at 1198 (in analyzing the first *Graham*

factor, considering whether a jury could find that a "reasonable officer" would have

"suspected" a battery).  Accordingly, the Court finds that the first *Graham* factor weighs

in favor of defendants.

### b.  Immediate Threat to Safety

The second *Graham* factor, whether the suspect posed an immediate threat to

the officers' safety, "is undoubtedly the most important and fact intensive factor in

determining the objective reasonableness of an officer's use of force." *Pauly v. White*,

874 F.3d 1197, 1216 (10th Cir. 2017) (internal quotation and citation omitted).

Defendants argue that plaintiff "obviously showed an immediate threat" because he

"repeatedly refuse[d] to obey every lawful command" and "produced a metal flashlight

from his pocket," which he threatened Deputy Powers with, "notably after refusing to

take his hand from his pocket."  Docket No. 40 at 8.  Defendants note that plaintiff

"repeatedly grabbed Powers's hand."  *Id.*  Plaintiff responds that he is a "disabled

14

veteran" and "can be seen on BWC video to be significantly smaller and more frail than both deputies, who were both armed with guns," while plaintiff "had a little flashlight and an unlit cigarette." Docket No. 52 at 24.

The undisputed facts demonstrate that plaintiff tried to walk away from Deputy Powers and refused Deputy Powers' subsequent directive to remove his hand from his pockets. Docket No. 40 at 4, ¶ 6. As Deputy Powers attempted to restrain plaintiff, plaintiff told Deputy Powers that "force is gonna be used against you." Docket No. 52 at 2-3, ¶ 8. When, due to plaintiff's resistance, Deputy Powers could not control plaintiff's hands, plaintiff was able to obtain a metal flashlight and threatened to use it to harm Deputy Powers. Docket No. 40 at 4, ¶ 11. Only at this point did Deputy Powers use the Taser. *See* Docket No. 52 at 15, ¶ 77. Plaintiff then grabbed Deputy Powers' Taser and later Deputy Powers' hand. Docket No. 40 at 5, ¶ 13. Based on plaintiff's actions, the Court finds that plaintiff posed an immediate threat to the safety of Deputy Powers, as well as Deputy Gonzalez, and that the second *Graham* factor weighs in favor of defendants. *See Wilson v. City of Lafayette*, 510 F. App'x 775, 778 (10th Cir. 2013) (unpublished) (holding that the second *Graham* factor weighed in favor of defendant where the officer used his Taser on the suspect, resulting in the suspect's death, after the suspect disregarded multiple commands and the suspect reached into his pockets despite being ordered not to do so); *compare Davis v. Clifford*, 825 F.3d 1131, 1135 (10th Cir. 2016) (holding that the second *Graham* factor weighed in favor of plaintiff because there was no evidence that she had "access to a weapon or that she threatened harm to herself or others").

15

### c.  Resistance to Arrest

As Deputy Powers attempted to twist plaintiff's left arm behind his back, Deputy Powers told plaintiff to put his hands behind his back because he was under arrest. Docket No. 52 at 14, ¶ 75.  Plaintiff did not put his hands behind his back and instead resisted Deputy Powers' attempt to restrain him.  Docket No. 40 at 4, ¶ 7.  Plaintiff repeatedly stated "no" and "no, I'm not" in response to Deputy Powers' commands.  *Id.* at 4, ¶¶ 7-9.  Based on the undisputed facts, a reasonable officer would have determined that plaintiff was resisting arrest.

Defendants assert that, after being taken to the ground, plaintiff "continued to resist and refuse lawful orders to put his hands behind his back."  *Id.* at 4-5, ¶ 12. However, plaintiff disputes that he resisted Deputy Powers between the time that Deputy Powers took plaintiff to the ground and when Deputy Powers used the Taser on him.  Plaintiff contends that he could not place his hands behind his back because Deputy Powers' position on top of plaintiff made it impossible to do so.  Docket No. 52 at 3, ¶ 12.  The video cited by plaintiff supports his assertion.  *See* Docket No. 41-1 at 6:50-7:14.  Similarly, plaintiff disputes defendants' assertion that he failed to obey Deputy Powers' command to roll on his back, arguing that he could not do so because Deputy Gonzalez was on his legs.  *See* Docket No. 52 at 3-4, 15, ¶¶ 12, 76.  The record also demonstrates that Deputy Powers alternated between conflicting commands, ordering plaintiff to roll onto his back and, when plaintiff did so in response to the pain from the Taser, ordered plaintiff to roll onto his stomach.  *Id.* at 15, ¶ 77.  "[W]hen a suspect is unable to comply with police commands, his lack of compliance is not resistance that could make force reasonable under the *Graham* factors."  *Krueger*, 154

16

F.4th at 1200.  However, it is undisputed that plaintiff, while on the ground, obtained the flashlight and threatened to harm Deputy Powers with it.  *See* Docket No. 40 at 4, ¶ 11. Furthermore, after Deputy Powers used the Taser against plaintiff, it is undisputed that plaintiff resisted arrest by attempting to grab Deputy Powers' Taser and later by attempting to grab Deputy Powers' hands rather than submitting to arrest.  *See id.* at 5, ¶ 13.  Thus, the undisputed facts show that plaintiff continued to resist until he was handcuffed.

Considering "the totality of the circumstances and the full length of the use of the force," the Court finds that the plaintiff was resisting arrest and that the third *Graham* factor weighs in favor of defendants.  *See Krueger*, 154 F.4th at 1206.

### d.  Balancing the *Graham* Factors

*Graham* requires the court to "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake, and consider ultimately whether the officers' actions are objectively reasonable."  *See Luethje v. Kyle*, 131 F.4th 1179, 1198 (10th Cir. 2025) (internal quotations, alteration, and citation omitted).  "To assess whether an officer acted reasonably in using force, a court must consider all the relevant circumstances, including facts and events leading up to the climactic moment."  *Barnes v. Felix*, 605 U.S. 73, 76 (2025).  "While the situation at the precise time of the use of force will often be what matters most earlier facts and circumstances may bear on how a reasonable officer would have understood and responded to later ones."  *Teetz as next friend of Lofton v. Stepien*, 142 F.4th 705, 723 (10th Cir. 2025) (internal quotations and alteration omitted) (citing *Barnes*, 605 U.S. at 723).

17

After plaintiff tried to walk away from Deputy Powers, Deputy Powers stopped plaintiff from doing so and then ordered him several times to remove his hand from his pockets, which plaintiff refused to do.  Docket No. 40 at 4, ¶ 6.  Deputy Powers then attempted to place plaintiff's arm behind his back, telling plaintiff he was under arrest, but plaintiff resisted.  *Id.*, ¶ 7.  When Deputy Powers told plaintiff that, if he continued to resist, force would be used against him, plaintiff stated that force would be used against Deputy Powers.  Docket No. 52 at 2-3, ¶ 8.  Deputy Powers took plaintiff to the ground as plaintiff continued resisting, with Deputy Gonzalez restraining plaintiff's legs.  *Id.* at 15, ¶ 76.  Even after Deputy Powers got plaintiff on the ground, plaintiff was able to obtain a metal flashlight and told Deputy Powers he could harm him with it.  Docket No. 40 at 4, ¶ 11.  At this point, Deputy Powers used his Taser on plaintiff.  Docket No. 52 at 15, ¶ 77.  However, plaintiff nevertheless proceeded to grab Deputy Powers' Taser and grab his hand.  Docket No. 40 at 5, ¶ 13.  Deputy Powers eventually handcuffed plaintiff.  Docket No. 52 at 16, ¶ 81.  In considering the *Graham* factors and the totality of the circumstances, the Court finds that plaintiff fails to state a claim for excessive force because defendants' use of force, in response to actions by plaintiff that grew increasingly threatening to their safety, was objectively reasonable.

Accordingly, the Court finds that plaintiff has not demonstrated a violation of his Fourth Amendment right to be free from excessive force and defendants are entitled to qualified immunity as to Claim Two.[15]

---

[15] Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case."  *Pearson*, 555 U.S. at 236.  Because plaintiff fails to state a Fourth Amendment excessive force claim, the Court will not consider whether defendants violated clearly established law.

### B.  Claim Three – §1983 Unreasonable Seizure Claim

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV.  A "seizure" of one's person occurs when a government actor terminates one's freedom of movement through means intentionally applied.  *See Brower v. County of Inyo*, 489 U.S. 593, 596–97 (1989); *Scott*, 550 U.S. at 381.  A government official "may make a seizure by a show of authority and without the use of physical force, but there is no seizure without actual submission" to the official's show of authority.  *Brendlin v. California*, 551 U.S. 249, 254 (2007); *see also United States v. Mosley*, 743 F.3d 1317, 1324 (10th Cir. 2014).  The Supreme Court has identified three types of police encounters with citizens: consensual encounters, investigative detentions, and arrests.  *Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2007) (en banc).  Investigative detentions and arrests are "seizures" within the meaning of the Fourth Amendment.  *Id*.

"An investigative detention, also called a *Terry* stop, is an encounter in which police may 'stop and briefly detain a person for investigative purposes.'"  *Morris v. Noe*, 672 F.3d 1185, 1191 (10th Cir. 2012) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)).  An investigative detention is justified "if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause."  *Id*. at 1191-92 (quoting *Sokolow*, 490 U.S. at 7).  The officer "must have a particularized and objective basis for suspecting the particular person stopped of criminal activity."  *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000).

Reasonable suspicion requires more than a "hunch," but is "considerably less than proof by a preponderance of the evidence or that required for probable cause." *United States v. Chavez*, 660 F.3d 1215, 1221 (10th Cir. 2011). Reasonable suspicion is based on the "totality of the circumstances." *Id*. at 1222. "[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer,* 460 U.S. 491, 500 (1983).

An arrest requires probable cause to believe that the arrestee committed a crime. *Fogarty*, 523 F.3d at 1156; *Cortez*, 478 F.3d at 1115-16. "In a qualified immunity context, the probable cause evaluation is a question of law appropriate for resolution by the Court." *Shimomura v. Carlson*, 17 F. Supp. 3d 1120, 1132 (D. Colo. 2014) (citing *Hunter v. Bryant*, 502 U.S. 224, 228 (1991)). When determining whether an officer has probable cause for an arrest, the court must "examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *District of Columbia v. Wesby*, 583 U.S. 48, 56-57 (2018) (internal quotations and citation omitted). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *York*, 523 F.3d at 1210 (quoting *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995)). Probable cause is not a high bar. *Wesby*, 583 U.S. at 57. "Because probable cause is measured by an objective standard, 'an arrest is lawful if the officer had probable cause to arrest for any offense, not just the offense cited at the time of arrest or booking.'" *Mglej*, 974 F.3d at 1161 (quoting *Wesby*, 583 U.S. at 54 n.2).

The Court considers whether the sequence of events following plaintiff and defendants' initial contact constitute an investigative detention or arrest. "A traffic stop is an investigative detention analogous to a *Terry* stop." *United States v. Soto*, 988 F.2d 1548, 1554 (10th Cir. 1993). Thus, "the detaining officer must have an objectively reasonable articulable suspicion that a traffic violation has occurred or is occurring before stopping the automobile." *See id.* Because Deputy Powers observed that plaintiff did not have a front license plate, in violation of Colo. Rev. Stat. § 42-3-202(3)(a), he had reasonable suspicion, if not probable cause, to detain plaintiff for purposes for conducting a traffic stop. *See* Docket No. 40 at 3, ¶ 1. Moreover, it was within the scope of the traffic stop for defendant to ask plaintiff to exit his vehicle. *United States v. Polly*, 630 F.3d 991, 998 (10th Cir. 2011) (it is "permissible during a routine traffic stop for purposes of officer safety" to ask a driver to step out of his vehicle). This is particularly true when an officer has concerns as to his safety due to passing cars.

However, the initial scope of the traffic stop, which involved the missing front license plate, was exceeded when Deputy Powers began questioning plaintiff regarding his possible intoxication. In order to prolong the stop, Deputy Powers needed reasonable suspicion that plaintiff was driving under the influence of alcohol or drugs. *See Leon v. Summit Cnty.*, 755 F. App'x 790, 793-94 (10th Cir. 2018) (unpublished) (describing defendant's actions to determine whether plaintiff was intoxicated as a "typical investigative detention, which does not require probable cause but can be conducted upon reasonable suspicion"). The parties dispute whether defendant

21

smelled alcohol on plaintiff's breath during the traffic stop.[16]  The Court agrees that whether Deputy Powers smelled alcohol on plaintiff's breath is a credibility issue that the Court cannot resolve on a summary judgment motion.  It is undisputed, however, that plaintiff did not exhibit signs of impairment driving or when he stepped out of his vehicle.  Docket No. 52 at 6, 8, ¶¶ 26, 41.  While it is undisputed that plaintiff indicated that he would not take a preliminary breath test and that plaintiff refused Deputy Powers' request to look at plaintiff's eyes, *see* Docket No. 52 at 10, 13, ¶¶ 56-57, 64, this alone cannot supply reasonable suspicion for DUI.  *See Florida v. Bostick*, 501 U.S. 429, 437 (1991) ("a refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure").  Thus, there is a dispute regarding whether defendants had reasonable suspicion to prolong plaintiff's detention for purposes of the DUI investigation.  Furthermore, defendants are not entitled to qualified immunity on that portion of plaintiff's unreasonable seizure claim that involves the prolongation of plaintiff's detention.  It was clearly established at the time of the traffic stop that "[a]n investigative detention must be temporary, lasting no longer than necessary to effectuate the purpose of the detention.  The scope of the detention must be carefully tailored to its underlying justification."  *United States v. Gutierrez-Daniez*, 131 F.3d 939, 942 (10th Cir. 1997).  Furthermore, it was clearly established that an

---

[16] In their Statement of Undisputed Material Facts, defendants assert that Deputy Powers observed "other indicia of intoxication."  Docket No. 40 at 3, ¶ 3.  Because defendants do not assert these "indicia" in their statement of facts, the Court will not consider them.  *Id.*  Even if the Court could consider the other indicia, the Court cannot find that defendants had reasonable suspicion for driving under the influence because the video footage does not show plaintiff having slurred speech, imbalance, or compromised motor skills.  *See* Docket No. 52 at 9, ¶¶ 46-47 (citing Docket No. 41-1).

investigative detention cannot be prolonged on the basis of unrelated inquiries absent

reasonable suspicion. *Rodriguez v. United States*, 575 U.S. 348, 355 (2015)

In their reply brief, defendants argue that plaintiff is precluded from litigating the

issue of whether defendant had reasonable suspicion and probable cause to conduct

the DUI investigation. *See* Docket No. 57 at 10-12. Defendants state that, during

plaintiff's jury trial, plaintiff filed a motion to suppress that asserted plaintiff's "detention

and arrest were made without reasonable suspicion or probable cause." *Id.* at 11.

Defendants indicate that the state court "found that Defendant Powers not only had

reasonable suspicion to conduct the investigatory stop, but had *actual* probable cause

for Plaintiff's arrest for driving under the influence *at the time Defendant Powers had*

*Plaintiff step out of the vehicle*." *Id.* (citing Docket No. 57-6 at 7). Specifically, the state

court found that, "at the time Deputy Powers had Mr. Schrecengost step out of the

vehicle, probable cause existed to believe that Mr. Schrecengost was driving under the

influence of alcohol." Docket No. 57-6 at 7. The state court found that "Deputy Powers

could order Mr. Schrecengost out of the vehicle both for officer safety and because he

had probable cause to believe Mr. Schrecengost was driving under the influence" and

that "at the time Deputy Powers began the process of requesting that Mr. Schrecengost

perform voluntary roadside maneuvers, there was probable cause to arrest him for

driving under the influence." *Id.* at 8. The state court thus concluded that, "at the time

Deputy Powers took hold of Mr. Schrecengost's arm to place him under arrest, that

arrest was supported by probable cause." *Id.*

"Under proper circumstances, federal courts accord preclusive effect to issues

decided by state courts." *Cortese v. Black*, 838 F. Supp. 485, 492 (D. Colo. 1993). To

determine whether the court should give preclusive effect to the state court's probable cause determination, the court applies Colorado law. *See Ortega v. City & Cnty. of Denver*, No. 11-cv-02394-WJM-CBS, 2013 WL 359934, at *3 (D. Colo. Jan. 30, 2013). Under Colorado law, issue preclusion applies when:

> (1) the issue is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding; (2) the party against whom estoppel was sought was a party to or was in privity with a party to the prior proceeding; (3) there was a final judgment on the merits in the prior proceeding; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the prior proceeding.

*Oaster Dev., LLC v. WD Consulting*, 778 F. Supp. 3d 1168, 1176 (D. Colo. 2025) (citation omitted).

The Court, however, declines to consider whether issue preclusion applies at this stage because defendants did not raise this argument until their reply brief. *See Gutierrez v. Cobos*, 841 F.3d 895, 902 (10th Cir. 2016) ("a party waives issues and arguments raised for the first time in a reply brief." (quoting *Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011)); *Perez v. City & Cnty. of Denver*, 2023 WL 7486461, at *2 n.3 (10th Cir. Nov. 13, 2023) ("[W]e see no reason why the arguments raised by a party for the first time in a reply brief in the district court should be evaluated differently [from an appellant's reply brief]. In either forum, waiting to raise an argument for the first time in a reply brief robs the other party of a chance to respond and denies the court the benefit of the adversarial process.").

However, even assuming that defendants lacked reasonable suspicion for the DUI investigation and that plaintiff is not precluded from litigating the issue, the Court finds that defendants' conduct following the DUI investigation did not violate plaintiff's Fourth Amendment right to be free from unreasonable seizure.

24

The Court first turns to the period of time after plaintiff walked away and Deputy Powers grabbed plaintiff's arm.  "A citizen has the constitutional right to walk away from a law enforcement officer who lacks probable cause or reasonable suspicion to detain or seize him or her."  *Romero v. Story*, 672 F.3d 880, 889 (10th Cir. 2012).  However, during a *Terry* stop, officers are authorized to take "steps as were reasonably necessary . . . to maintain the status quo during the course of the stop."  *See United States v. Hensley*, 469 U.S. 221, 235 (1985); *Moore v. Pederson*, 806 F.3d 1036, 1044 n.11 (11th Cir. 2015) ("In the *Terry* stop, the person is detained within the meaning of the Fourth Amendment; he cannot simply walk away or otherwise avoid the encounter.").  Assuming Deputy Powers lacked reasonable suspicion to investigate driving under the influence, the initial purpose of the traffic stop had not been completed because Deputy Powers had not yet issued plaintiff a citation for the missing front license plate.  *See* Docket No. 52 at 7, ¶ 29.  Thus, the question is whether – despite the lawful purpose of the investigative detention not yet being completed – plaintiff had the right to walk away when the investigative detention had become prolonged without the requisite DUI reasonable suspicion.  The Court finds, even assuming that Deputy Powers unlawfully prolonged the investigative detention, the fact that the *Terry* stop had not yet concluded permitted Deputy Powers to keep plaintiff at the scene.  *See Leibel v. City of Buckeye*, 556 F. Supp. 3d 1042, 1068 (D. Ariz. 2021) (where the evidence established that the officer's "investigation had not run its course at the time" plaintiff attempted to walk away, the officer "was entitled to use force to keep [plaintiff] from leaving" during a *Terry* stop).  A suspect is not permitted to leave in the middle a traffic stop.  *See United States v. Sullivan*, 138 F.3d 126, 130–31 (4th Cir. 1998) ("a motorist during a routine traffic

stop is detained and not free to leave"); *United States v. Acosta*, 363 F.3d 1141, 1149 (11th Cir. 2004) ("traffic stops, like *Terry* stops generally, are indeed stops. A reasonable person knows that he is not free to drive away from a traffic stop until it is completed, just as a reasonable person knows that he is not free to walk away from a *Terry* stop until it is over."). Deputy Powers was therefore authorized within the scope of the *Terry* stop to prevent plaintiff from walking back towards his automobile by grabbing plaintiff's arm. *See Morris*, 672 F.3d at 1192 ("Officers may restrain an individual in order to maintain the status quo during the course of a *Terry* stop.") (internal quotations and citation omitted).[17]

As Deputy Powers prevented plaintiff from walking away, plaintiff had his hand in his pockets and refused Deputy Powers' order to remove it. After plaintiff failed to comply, defendant tried to place plaintiff's arms behind his back in an attempt to restrain him. Without exceeding the scope of a *Terry* stop, officers are permitted to take steps "reasonably necessary to protect their personal safety." *See Hensley*, 469 U.S. at 235. The Tenth Circuit has approved forceful methods of restraint where officers "reasonably feared for their safety." *See Morris*, 672 F.3d at 1192 ("We have approved both a takedown and the use of handcuffs during the course of a *Terry* stop, where the officers reasonably feared for their safety.") (collecting cases); *see United States v. Salas-*

---

[17] The fact that a prolongation of detention was unlawful does not preclude the Court from considering evidence that arose following the unlawful prolongation. *See Shaw v. Schulte*, 36 F.4th 1006, 1017 (10th Cir. 2022) ("Considering the marginal deterrent effect of applying the exclusionary rule within the § 1983 context with the fact that not applying the rule would merely truncate the scope of a § 1983 action but not bar pursuit of the action, we agree with the seeming consensus in our sibling circuits that the exclusionary rule and fruit-of-the-poisonous-tree doctrine do not apply in the § 1983 context.").

*Garcia*, 698 F.3d 1242, 1249 (10th Cir. 2012) ("The use of handcuffs or placing suspects on the ground during a *Terry* stop does not necessarily turn a lawful *Terry* stop into an arrest under the Fourth Amendment.") (internal quotations, alteration, and citation omitted).  Here, where plaintiff refused to take his hand out of his pockets after having just tried to walk away, the Court finds that a reasonable officer would have feared for his safety and it was lawful for him to attempt to restrain plaintiff.  In doing so, Deputy Powers did not exceed the scope of the *Terry* stop.[18]

The Court next turns to Deputy Powers' takedown of plaintiff.  The Tenth Circuit has held that throwing a suspect to the ground, where the suspect "presented no threat to officer safety and had not engaged in any suspicious activity," transforms a *Terry* stop into an arrest for which probable cause is required.  *See Morris*, 672 F.3d at 1192; *Cortez,* 478 F.3d at 1130 ("an unreasonable level of force transforms a *Terry* detention into an arrest requiring probable cause") (citation omitted).  Nevertheless, "[a]lthough *Terry* stops are normally non-intrusive, . . . law enforcement may (1) display some force, (2) place suspects on the ground, (3) use handcuffs, or (4) detain suspects in law enforcement vehicles, even in the absence of probable cause."  *See Cortez,* 478 F.3d at 1130; *Gallegos v. City of Colorado Springs*, 114 F.3d 1024, 1030 (10th Cir. 1997) ("as long as the precautionary measures employed by officers during a *Terry* stop are reasonable, they will be permitted without a showing of probable cause").  Here,

---

[18] Although Deputy Powers stated during the struggle that plaintiff was under arrest, his pronouncement is not dispositive as to whether plaintiff was subjected to an arrest or investigative detention.  *See United States v. Diaz-Lizaraza*, 981 F.2d 1216, 1221 (11th Cir. 1993) ("The character of a seizure as arrest or *Terry* stop depends on the nature and degree of intrusion, not on whether the officer pronounces the detainee 'under arrest.'") (citing *Dunaway v. New York,* 442 U.S. 200, 212 (1979)).

defendants reasonably feared for their safety because plaintiff attempted to walk away, had his hand in his pockets once stopped, and refused multiple commands to take his hand out of his pockets.  Furthermore, plaintiff resisted Deputy Powers' attempt to restrain him.  Given plaintiff's resistance, plaintiff's subsequent threat to use force against Deputy Powers, and the fact that less aggressive means of restraining plaintiff had failed, it was reasonable for Deputy Powers to take plaintiff to the ground in an attempt to restrain him.  Not only did Deputy Powers' conduct not exceed the scope of the *Terry* stop, he also had probable cause at that point to believe that plaintiff had committed the crime of Obstruction.  Colo. Rev. Stat. § 18-8-104 provides in relevant part:

> A person commits obstructing a peace officer . . . when, by using or threatening to use violence, force, physical interference, or an obstacle, such person knowingly obstructs, impairs, or hinders the enforcement of the penal law or the preservation of the peace by a peace officer, acting under color of his or her official authority.

Colo. Rev. Stat. § 18-8-104(1)(a).  Plaintiff refused to remove his hands from his pockets, told Deputy Powers that force would be used against him, and resisted Deputy Powers' attempts to restrain him.  These facts are sufficient to "lead a prudent person to believe" that plaintiff had committed the crime of obstruction.  *See York*, 523 F.3d at 1210.  Thus, defendants had probable cause to arrest plaintiff.

Turning to Deputy Powers' use of the Taser when plaintiff was on the ground, by that point, not only had plaintiff threatened to use force against Deputy Powers before the takedown, but plaintiff obtained a metal flashlight, held it in his hand, and threatened to use it as a weapon against Deputy Powers, indicating that plaintiff was still a serious threat to the officers' physical safety.  Under these circumstances, even if defendants

28

lacked probable cause to arrest plaintiff, the Court finds that Deputy Powers' use of the Taser did not transform the detention into an arrest because it was a reasonable use of force given the threat to defendants' safety. *See United States v. Fields,* 449 F. App'x 146, 148, 149 (3d Cir. 2011) (unpublished) (holding that officer's use of a Taser did not elevate the investigative detention to a arrest where officers used "physical force after less aggressive means were unsuccessful" and the suspect did not "yield to the show of authority and created an environment where the Officers felt threatened"); *United States v. Colon*, 654 F. Supp. 2d 326, 333 (E.D. Pa. 2009) (holding that the officer's "use of the taser on the Defendant did not raise this confrontation to an arrest" where the officers "suspected the Defendant was carrying contraband and, for their own safety and the safety of others in the neighborhood, did not want to pursue the Defendant through dimly lit streets").

Following the use of the Taser, the Court need not determine whether the *Terry* stop was transformed into an arrest because defendants had probable cause to believe, not only that plaintiff committed the crime of obstructing a peace officer, *see* Colo. Rev. Stat. 18-8-104(1)(a), but also that plaintiff had committed the crime of attempted assault on a peace officer. Plaintiff was convicted of Obstruction by a jury in his state case, demonstrating that there was probable cause to arrest on the basis of § 18-8-104. Docket No. 40 at 5, ¶ 15; *see Blake v. Hong*, 2023 WL 382928, at *3 (10th Cir. Jan. 25, 2023) ("Because a jury convicted Mr. Blake, he cannot plausibly allege there was no probable cause to issue the citation.") (citing *Cameron v. Fogarty*, 806 F.2d 380, 388-89 (2d Cir. 1986) ("where law enforcement officers have made an arrest, the resulting conviction is a defense to a § 1983 action asserting that the arrest was made without

29

probable cause")).[19]  Moreover, at this point in the encounter, plaintiff threatened to use the metal flashlight as a weapon, grabbed Deputy Powers' Taser, and grabbed Deputy Powers' hand, which prevented him for radioing for assistance.  The Court finds that an objectively reasonable officer would view these facts as establishing probable cause that plaintiff had committed the crime of attempted assault.  *See Wesby*, 583 U.S. at 56-57.

Accordingly, the Court will dismiss that portion of Claim Three that alleges defendants unreasonably seized plaintiff after he attempted to walk away.[20]  Claim Three will be limited to plaintiff's claim that defendants unreasonably prolonged his detention to conduct an investigation into whether plaintiff was driving under the influence.

### C. <u>Claim One – State Claims for Wrongful Arrest and Excessive Force</u>

Plaintiff brings claims for wrongful arrest and excessive force, in violation of Art. II § 7 of the Colorado Constitution, pursuant to Colo. Rev. Stat. § 13-21-131.  Docket No.

---

[19] The Court declines to find that plaintiff's conviction for Obstruction prevents him from bringing an unreasonable seizure claim.  Although the jury convicted plaintiff of Obstruction, it is unclear on which events the jury based its determination.  For example, if the basis for plaintiff's Obstruction conviction did not arise until after plaintiff grabbed the Taser and Deputy Powers' hands, then plaintiff would not be precluded from bringing an unreasonable seizure claim for any seizure that occurred before that point.  The Court is permitted to truncate plaintiff's unreasonable seizure claim.  For instance, in *Shaw*, 36 F.4th at 1014, the Tenth Circuit considered plaintiff's seizure as it occurred at two points: (1) the initial prolongation of a traffic stop for a K-9 sweep and (2) the prolongation after the K-9 alerted.  *Shaw* denied summary judgment for the officer on plaintiff's claim as it related to the first seizure.  *See id.* at 1016.  However, *Shaw* granted summary for the officer, regarding the second seizure, because probable cause arose for the seizure after the K-9 alerted.  *See id.* at 1017-1018.

[20] Because plaintiff fails to state a Fourth Amendment unreasonable seizure claim for this portion of Claim Three, the Court will not consider whether defendants violated clearly established law.  *See Pearson*, 555 U.S. at 236.

1 at 28-30.  Given the Court's finding that plaintiff has not demonstrated a Fourth Amendment excessive force claim pursuant to § 1983, the Court finds that plaintiff cannot show an excessive force violation under the Colorado Constitution.  *See Woodall v. Godfrey,* 553 P.3d 249, 257 (Colo. App. 2024) ("when determining whether the force used to effect a seizure is reasonable under article II, section 7 of the Colorado Constitution, courts should apply the 'objective reasonableness' standard articulated in *Graham*").  "The Colorado Supreme Court has observed that Article II, section 7 is 'almost identical' to the federal Fourth Amendment."  *Shash v. City of Pueblo*, 770 F. Supp. 3d 1279, 1307 (D. Colo. 2025) (citing *Colorado v. Rister*, 803 P.2d 483, 489 (Colo. 1990)).  Accordingly, the Court will dismiss that portion of Claim One that asserts a claim for excessive force in violation of Art. II, § 7 of the Colorado Constitution.  Furthermore, the Court will dismiss that portion of plaintiff's unreasonable seizure claim under Claim One that does not concern the prolongation of the traffic stop for purposes of the DUI investigation, i.e., after the point that plaintiff turned and started to walk away.

## IV. CONCLUSION

Therefore, it is

**ORDERED** that Defendants' Motion for Summary Judgment [Docket No. 40] is **GRANTED in part**.  It is further

**ORDERED** that Claim Two is **DISMISSED with prejudice**.  It is further

**ORDERED** that the portion of Claim Three that asserts a claim for unreasonable seizure that does not concern the prolongation of plaintiff's detention for the DUI investigation is **DISMISSED with prejudice**.  It is further

31

ORDERED that Claims Four, Five, and Six are **DISMISSED with prejudice**.  It is

further

ORDERED that the portion of Claim One that asserts a claim for excessive force

is **DISMISSED with prejudice**.  It is further

ORDERED that the portion of Claim One that asserts a claim for unreasonable

seizure that does not concern the prolongation of plaintiff's detention for the DUI

investigation is **DISMISSED with prejudice.**

DATED March 30, 2026.

BY THE COURT:

PHILIP A. BRIMMER
United States District Judge